IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA METCALF, *et al.*,                    :        4:11-cv-127
                                            :
         Plaintiffs,                 :
       v.                                 :        Hon. John E. Jones III
                                            :
MERRILL LYNCH, PIERCE, FENNER &             :
SMITH., *et al.*,                           :
                                            :
         Defendants.                :

## MEMORANDUM AND ORDER

### October 5, 2012

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Presently before the Court is the Motion for Summary Judgment of Defendants Merrill Lynch, Pierce, Fenner & Smith, Incorporated, and Robin Brubacher.  (Doc. 139).  For the reasons set forth below, the motion shall be granted.

## I.   PROCEDURAL HISTORY

On August 17, 2009, Plaintiffs Linda Metcalf, ("Metcalf"), Michelle Hartly, ("Hartly"), Filmwest Productions, LLC, ("FW"), Sunwest Capital Management, Inc., ("SCM"), and Do You Know Where Your Parents Are, LLC, ("Parents LLC") (collectively "Plaintiffs"), filed a complaint in the Eastern District of

Pennsylvania against Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc.,

("Merrill Lynch" or "ML"), Lawrence R. Bellmore, Jr., ("Bellmore"), Solar Wind

Productions, LLC, ("SWP"), Michael Jacobs, Ruby Handler-Jacobs, (the

"Jacobs"), and Rio Grande Studios, LLC ("Rio Grande").[1]  (Doc. 1).  Specifically,

Plaintiffs asserted claims against Defendants for violations of the following: (1)

Count I:  Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961-1968; (2) Count II:  Fraud; (3) Count III:  Conversion; (4) Count

IV:  Conspiracy; (5) Count V:  Breach of Fiduciary Duty against Bellmore and

Merrill Lynch; (6) Count VI: Breach of Fiduciary Duty against Michael Jacobs,

Ruby Jacobs and Solar Wind LLC Productions; (7) Count VII:  Declaratory

Judgment against Solar Wind LLC; and (8) Count VIII:  Breach of Contract

against Solar Wind LLC, all of which stem from a failed financing agreement to

produce a motion picture based on a screenplay known as "Do You Know Where

Your Parents Are?"  (*Id*.).

Following a somewhat convoluted procedural path involving the filing of

approximately six motions, including a Motion to Dismiss, (Doc. 10), filed on

October 23, 2009; a Motion to Strike, or in the Alternative, to Dismiss the Answer

---

[1]  SWP, Michael Jacobs, Ruby Handler-Jacobs, and Rio Grande Studios, LLC shall also be referred to as the "Jacobs Defendants" throughout the remainder of this memorandum.

of the Defendants, (Doc. 29), filed on January 26, 2010; a Motion for Summary

Judgment Compelling Arbitration, (Doc. 32), filed on February 9, 2010; a Motion

to Compel Arbitration and Stay Proceeding, (Doc. 36), filed on February 23, 2010;

a Motion to Stay Proceedings, (Doc. 43), filed on March 15, 2010; and a Motion

to File an Amended Complaint, (Doc. 59), filed on July 7, 2010, none of which

were decided, the case was transferred to this Court via an order granting the Joint

Motion to Transfer Venue, (Doc. 77), on January 13, 2011.  (Doc. 78).

On February 1, 2011, we conducted a telephone status conference to aid the

Court in discerning the status of the numerous pending motions.  At that time,

counsel for all parties agreed that a stay of discovery as to the Jacobs Defendants

would be appropriate pending resolution of the Motion for Summary Judgment

Compelling Arbitration, but that discovery as to Merrill Lynch should continue.

On March 9, 2011, we issued a memorandum and order granting the Motion for

Summary Judgment Compelling Arbitration, (Doc. 32), granting the motion of

Merrill Lynch to compel arbitration and stay the proceeding of the crossclaim of

Defendant Lawrence R. Bellmore, (Doc. 36), and denying as moot the Jacobs

Defendants' motion to stay proceedings pending ruling on the motion for summary

judgment to compel arbitration, (Doc. 43).  (Doc. 87 at 28).  We also ordered

Plaintiffs and the Jacobs Defendants to submit their claims to arbitration in

accordance with the arbitration provision in the Financing Agreement, and ordered that Bellmore submit his counterclaims against Merrill Lynch to arbitration.  (*Id*. at 28-29).

Subsequently, we denied Plaintiffs' motion to strike, or in the alternative, to dismiss the answer of Defendants, (Doc. 29), and denied as moot any remaining arguments concerning the adequacy of Defendants' arbitration demand.  (Doc. 89 at 11).  In the same order, we directed the clerk to vacate the default against SWP, the Jacobs Defendants, and Rio Grande Studios for failure to appear, plead, or otherwise defend entered on October 20, 2009.  (*Id*.).  Thereafter, on June 7, 2011, Plaintiffs filed an amended complaint, (Doc. 94), alleging the following claims against Merrill Lynch, Bellmore, Robin Brubacher ("Brubacher"),[2] the Jacobs Defendants, SWP, and Rio Grande Studios: (1) Count I – Plaintiffs v. Defendants, Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968; (2) Count II – Plaintiffs v. Defendants, Fraud; (3) Count III – Plaintiffs v. Defendants, Conversion; (4) Count IV – Plaintiffs v. Defendants, Conspiracy; (5) Count V – Plaintiffs v. Defendants Bellmore, Brubacher, and Merrill Lynch, Breach of Fiduciary Duty; (6) Count VI – Plaintiffs v. Defendants Michael Jacobs,

---

[2]  Merrill Lynch and Brubacher shall hereinafter be referred to collectively as the "Merrill Lynch Defendants" or the "ML Defendants."

Ruby-Handler Jacobs and Solar Wind LLC Productions, Breach of Fiduciary

Duty; (7) Count VII – Plaintiffs Parents LLC and FilmWest LLC v. Defendant

Solar Wind LLC, Declaratory Judgment; and (8) Count VIII – Plaintiffs Parents

LLC and FilmWest LLC v. Defendant Solar Wind LLC, Breach of Contract.

(Doc. 94).

Thereafter, on July 19, 2011, the Merrill Lynch Defendants filed a Motion

to Dismiss the amended complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  (Doc. 106).  On October 31, 2011, we issued an Order (Doc. 112)

granting in part and denying in part that motion.  We granted Merrill Lynch

Defendants' motion to the extent of (1) Plaintiffs' RICO claims pursuant to 18

U.S.C. § 1962(a); (2) Plaintiffs' standing to claim damages under RICO for lost

financing opportunities, reputational harm, loss of business goodwill, and

consequential damages to other business interests; and (3) Plaintiffs' claim for

damages under fraudulent misrepresentation related to lost financing

opportunities, reputational harm, loss of business goodwill, and consequential

damages to other business interests. We denied Merrill Lynch Defendants' motion

to the extent of (1) Defendants' res judicata argument; (2) Plaintiffs' RICO claim

pursuant to 18 U.S.C. § 1962(c); (3) Plaintiffs' standing to claim damages for the

loss of the original $200,000 deposit; (4) Plaintiffs' RICO claim pursuant to 18

U.S.C. § 1962(d); (5) Plaintiffs' fraudulent misrepresentation claim as to the

$200,000 deposit; (6) Plaintiffs' conversion claim; (7) Plaintiffs' breach of

fiduciary duty claim; and (8) Plaintiffs' civil conspiracy claim.

On August 1, 2012, the Merrill Lynch Defendants filed the Motion for

Summary Judgment that is currently at issue (Doc. 139) along with a brief in

support thereof (Doc. 140).  Plaintiffs filed a brief in opposition on August 22,

2012, (Doc. 144), and Defendants filed a reply brief on September 5, 2012.  (Doc.

145).  On September 17, 2012, Plaintiffs filed a motion for leave to file a sur reply

brief in opposition to the Motion for Summary Judgment.  (Doc. 147).  We find

that the arguments contained therein are tangential to the merits of the case, and

the request is denied. Thus, the pending motion has been fully briefed and is ripe

for disposition.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by

pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).   An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law.  *Anderson v. Liberty Lobby,*

*Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely

on allegations of denials in its own pleadings; rather, its response must ... set out

specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party.  *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*, 477 U.S. at 247-48.

## III.   FACTUAL BACKGROUND

Plaintiff Metcalf, a resident of California, is the Vice President of SCM, a corporation registered and with its principal place of business in Nevada, and an investor in the "Do You Know Where Your Parents Are?" film project.  (Doc. 94 ¶ 2).  Plaintiff Hartly, also a resident of California, produces feature-length films and is the managing member of FW, an LLC registered in California with its principal place of business in the same state.  (*Id*. ¶ 3).  Hartly is also a managing member of Parents LLC, registered in California for the purpose of producing a feature-length film.  (*Id*.).  In October 2008, FW and Metcalf signed a term sheet to produce a film based on the "Do You Know Where Your Parents Are?" screenplay and Metcalf transferred $200,000 to an account controlled by FW.  (*Id*. ¶ 11).  In addition, Plaintiffs claim that steps were undertaken to establish Parents

LLC, which was recorded by the California Secretary of State in January 2009. (*Id*.).

On January 28, 2009, the Jacobs, who are husband and wife residents of New Mexico and members of SWP, solicited Hartly, Metcalf, FW, and Parents to enter into a joint venture with "SWP Film Fund presented by Rio Grande Studios," a "complicated film financing enterprise. (*Id*. ¶ 12). The solicitation materials included information prepared by Merrill Lynch which bore its insignia and trademarks, including "VIA and WCMA Account Applications," and "instructions for Solar Wind Productions, LLC clients who are not also clients of Merrill Lynch" describing its involvement in the film financing through Bellmore. (*Id*. ¶ 15). Plaintiffs allege that the ML Defendants knew that the Jacobs Defendants, SWP, and Rio Grande were using Merrill Lynch documents to solicit investors. (*Id*. ¶ 16).

Plaintiffs contend that on March 9, 2009, Robert Chanpong, a Vice President with ML in Pasadena, California complained to ML's Office of General Counsel that he was concerned that one of his clients in California had been solicited by the same marketing materials alleged to be part of the fraud herein. (*Id*. ¶ 17). As a result, on March 13, 2009, Alvin Walton, the Administrative Manager at ML in Allentown, informed Bellmore that the SWP Defendants could

not use ML's information for any solicitations.  (*Id*.).  Despite this directive, Plaintiffs contend that no one associated with ML informed Plaintiffs of the misrepresentations that had already occurred.  (*Id*.).  During a conference call on the same day, Bellmore affirmed the Jacobs Defendants' representation that the fund was "inside" of and administered by ML.  (*Id*. ¶ 18).

On March 13, 2009, Hartly contacted Brubacher at ML's Allentown office and raised a number of questions regarding ML's handling of Plaintiffs' funds.  In response, Brubacher (a) verified Bellmore's employment status with ML; (b) verified that the "Solar Wind Productions Film Fund" was in fact "inside" ML and managed by ML, and (c) stated that the Solar Wind project was the first time ML established a fund in this form.  (*Id*. ¶ 19).  Plaintiffs claim that Brubacher was intimately involved in the management of the Solar Wind LLC accounts, and that Brubacher was required to approve each wire transaction to or from the accounts. (*Id*. ¶ 20).

On March 16, 2009, Bellmore emailed Hartly, Metcalf, Jacobs and Handler-Jacobs the following:

> The contract calls for wiring funds to the Solar Wind Account and having 2 signatures on the account for the protection of the producer. That cannot be accomplished as it then gives Linda authority over other client accounts and assets beyond the CD in the Solar Wind account and other sub accounts.  Therefore, I setup the sub account for wiring funds

directly to it.  For the moment, Linda Metcalf is the only signature on the account and will be in control of the funds.  Once the account is established we can add the CFO as the other signature on the sub-account and require two signatures from that point out. . . .

(*Id*. ¶ 22).

Plaintiffs note that on March 24, 2009, Bellmore and ML received the due diligence and signatory card Metcalf needed to open the Parents LLC subaccount. (*Id*. ¶ 23).  On March 27, 2009, Jacobs called Hartly and threatened that if the money was not deposited by March 30, the Jacobs Defendants would sue Plaintiffs and not fund the film.  (*Id*. ¶ 24).  On March 30, 2009, another conference call was held between ML, Bellmore, the Jacobs Defendants, Metcalf, and Hartly, at which point they again discussed the specifics of the deposit.  (*Id*. ¶ 25).  On the same day, Parents LLC wired Metcalf's $200,000 to SCM's Bank of America account. (*Id*. ¶ 26).  Plaintiffs also allege that on April 1, 2009, Roger Metcalf, Linda Metcalf's husband, purchased a cashier's check for $200,000 payable to Solar Wind LLC,  deposited the same into Solar Wind LLC's account number 888-07SD12 for it to be immediately transferred to the Parents LLC subaccount pursuant to Bellmore's instruction, at which point it would be converted to a 90 day CD to fund a line of credit for the film.  (*Id*. ¶ 27).  Instead, Plaintiffs claim, the $200,000 was not transferred to the Parents LLC account, or converted into a

90 day CD, but was commingled with other investors' funds and converted by the Solar Wind Defendants in order to pay off more than $150,000 that ML previously loaned to SWP.  (*Id*. ¶ 28).

Plaintiffs contend that Defendants intentionally left the deposited funds in SWP's primary account so it could convert the funds to satisfy its own debts to ML.  (*Id*. ¶ 29).  Furthermore, they claim that by April 1, 2009 Defendants had perpetuated this illegal scheme and induced other investors and producers to make deposits into the SWP account upon the belief that the money would be transferred to a subaccount, controlled by the investors and producers, which would then be converted into a CD.  (*Id*. ¶ 30).  Plaintiffs also allege that on April 1, 2009, counsel for Trojan Productions, an entirely different film, demanded that ML return investors' funds that were deposited into the same SWP account in December of 2008 based on similar misrepresentations made by the ML Defendants and the Jacobs Defendants.  (*Id*. ¶ 31).  They claim that in response to the demand by Trojan Productions, Bellmore wrote to Brubacher "the fear has begun," implying that ML and its employees feared their fraudulent scheme had been uncovered.  (*Id*. ¶¶ 32-33).

Concerning the commingling of investor funds, Plaintiffs allege that at the same time account 888-07D12 (the "D12" account) was established, ML created a

Loan Management Account 888-07D13 (the "D13" account), which was partially collateralized by funds in the D12 account. (*Id*. ¶¶ 34-35). Brubacher supervised both the D12 and D13 accounts and authorized Bellmore's request in January of 2009 allowing the SWP Defendants to initiate wire transfers withdrawing funds from the account. (*Id*. ¶ 36). Plaintiffs claim that Bellmore stated in a January 2, 2009 email that "Funds from Trojan Productions, LLC and RARA, LLC are in the Solar Wind Productions, LLC WCMA account." (*Id*. ¶ 37). They claim that not only was Bellmore aware of the commingling, but so too was Brubacher. (*Id*.).

Additionally, Plaintiffs maintain that less than one month after opening the D12 account for Trojan Productions and RARA, SWP had already withdrawn $117,250 in cash in order to continue funding their fraudulent scheme. (*Id*. ¶ 38). They also claim that on January 20, 2009, SWP purchased a "CD Eurobank" for $200,000 and that as of January 30, 2009, the D12 account had $21,495.12 in cash and the CD Eurobank was worth $199, 651.80. (*Id*.). Plaintiffs assert that because cash in the D12 account was quickly being exhausted, SWP began making withdraws from the D13 account in February of 2009 for "loan advances," which were ultimately paid to the Solar Wind Defendants personally. (*Id*. ¶ 41). They highlight that by March 31, 2009, only $10,268.25 in cash remained in the D12 account, and that through the D13 account, ML had advanced SWP $155,177.83,

13

which was secured against the CD Eurobank D12 account.  In sum, in the span of three months SWP converted more than $25,000 of Trojan Production's and RARA's cash and incurred debt of more than $150,000 secured against a CD purchased with those investor's funds.  (*Id*. ¶ 42).

Moreover, Plaintiffs highlight that the ML Defendants' knew of the fraud because on March 18, 2009, Bellmore forwarded an email exchange to two attorneys and requested advice as to how he should handle Plaintiffs' deposit given the fraudulent activity in the accounts.  (*Id*. ¶ 47).  They claim that instead of freezing the account and alerting Plaintiffs of the fraudulent activity, the ML Defendants assured Plaintiffs that depositing their funds into the D12 account was safe.  (*Id*. ¶ 48).  Also, it was only after Plaintiffs made the initial deposit that they learned the individual SWP held out as its Chief Financial Officer never held such a position.  (*Id*. ¶ 49).

On April 3, 2009, after Trojan Productions demanded that their funds be returned and terminated their contract with SWP, Bellmore forwarded to SWP the information necessary to establish the subaccount that the ML Defendants represented had existed since the beginning of the agreement.  (*Id*. ¶ 53).  During the interim, Plaintiffs claim they received numerous confusing and conflicting explanations as to why their funds had not been transferred to a subaccount.  (*Id*. ¶

14

54).  On April 8 and 10, 2009, SWP withdrew $5,000 from the D12 account,
transactions that Plaintiffs neither authorized nor were informed about.  (*Id*. ¶¶ 55,
56).  They also claim that between April 10 and April 12, a total of $407.32 was
spent out of the D12 account through a Visa card, again without the consent of
Plaintiffs.  (*Id*. ¶ 57).

Thereafter, on April 17, 2009, Plaintiffs maintain that Bellmore forwarded
Alvin Walton an email he had sent to SWP that day regarding "moving $200k
from Solar Wind to Solar Wind sub account."  (*Id*. ¶ 58).  They also allege that on
April 20, 2009, the CD Eurobank was sold for $199,874 and the proceeds were
deposited into the D12 account, another transaction unauthorized by Plaintiffs.
(*Id*. ¶ 59).  Consequently, on April 22, 2009, Plaintiffs contacted ML's office,
including Brubacher, and demanded that ML return Plaintiffs' funds.  The same
day, ML transferred $166,060.74, the precise amount needed including finance
charges to satisfy the D13 debt, from the D12 account to the D13 account.  Again,
this transaction was not authorized by Plaintiffs.  (*Id*. ¶ 60).  The next day, ML
used the $166,060.74 in the D13 account, without Plaintiff's permission, to satisfy
SWP's debt to ML.  (*Id*. ¶ 61).

On April 27, Brubacher distributed a memo instructing all ML employees to
defer communications with any of the Plaintiffs to ML's outside counsel.  (*Id*. ¶

15

62).  Subsequently, Plaintiffs spoke with Brubacher and ML's outside counsel who each assured Plaintiffs that their deposit was "intact" and "separate" from other investors' funds.  (*Id.* ¶ 63).  On May 19, 2009, Plaintiffs gave SWP written notice that any prior understandings or agreements between them were terminated and/or rescinded.  (*Id.* ¶ 64).  Plaintiffs contend that as of the filing of the amended complaint, about 54% of the investors' funds had been interpleaded into New Mexico state court and, while it is unknown where the remainder of the deposit is located, Plaintiffs maintain that $166,060.74 was withdrawn by ML and that SWP is in possession of the remainder.  (*Id.* ¶ 65).  Plaintiffs emphasize that Defendants have not refunded any of the deposit to Plaintiffs and have instead claimed entitlement to the same.  (*Id.*).  Finally, Plaintiffs contend that Defendants' conversion of their deposit has delayed indefinitely the production of Plaintiffs' film project and has resulted in the loss of other financing opportunities.  (*Id.* ¶ 67).  Plaintiffs allege direct and consequential damages to their film production business as a result of Defendants' conduct.  (*Id.* ¶¶ 68, 69).

## IV.   DISCUSSION

The Merrill Lynch Defendants present only one argument in support of their Motion for Summary Judgment.  That argument is based on the common law principle of res judicata, which the Merrill Lynch Defendants believe warrants

16

dismissal of this case.  Plaintiffs argue that ML Defendants have not proven the elements necessary to establish a res judicata defense and that, even if they have, ML Defendants nevertheless acquiesced to Plaintiffs' action in this Court by not objecting to claim-splitting in a timely manner.

### A.     Res Judicata

Res judicata, also known as claim preclusion, "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328-329 (1971)).  For res judicata to apply and bar a plaintiff's claim, three elements must be met: (1) a final judgment on the merits must have been rendered in the prior suit; (2) the same parties or their privities must have been involved in both suits; and (3) the subsequent suit must be based on the same cause of action as the original.  *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir.2008). Res judicata is an affirmative defense.  *See* Fed. Rule Civ. Proc. 8(c)(1).  Defendants therefore carry the burden of establishing the three required elements.  *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)(citing 18 Wright & Miller § 4405, p. 83).

### 1.     Final Judgment on the Merits

In order for res judicata to apply, a final judgment on the merits must have been rendered in the prior suit. *In re Mullarkey*, 536 F.3d, at 225. This element does not strictly require a formal entry of judgment. Settlement is sufficient to constitute final judgment on the merits for res judicata purposes. *See Weber v. Henderson*, 33 Fed. Appx. 610, 612 (3d Cir.2002) ("For purposes of res judicata, final judgment on the merits occurred when the District Court approved the settlement and dismissed the case...").

As we stated in our October 31, 2011 Order on ML Defendants' Motion to Dismiss, we agree with the ML Defendants that the prior action in New Mexico state court resulted in a final judgment on the merits because that action was settled. (Doc. 106 Exs. 6, 7). As the settlement in the prior New Mexico action was approved and the interpleader action was dismissed with prejudice, we find there to have been a final judgment under the first element.

## 2.   Involvement of Same Parties or Their Privities

The second element that must be satisfied in order for res judicata to apply is that the same parties or their privities must have been involved in both suits. *In re Mullarkey*, 536 F.3d, at 225. In other words, a party must have either been a participant in the prior adjudication or have been so intimately involved in that adjudication that it is fair and equitable to require that party to accept the earlier

18

judgment. *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 (1996).

Whether a party was also a participant in a prior adjudication is a simple determination; all that must be done is to look at the parties and see if the names are the same.  However, even when a party to the current action was not a party to the prior action, res judicata may nevertheless bar the later claim.  "The doctrine of res judicata applies to and is binding, not only on actual parties to the litigation, but also to those who are in privity with them." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 n. 11 (3d Cir.2006).  The Supreme Court has set forth six situations where a decision has preclusive effect on a nonparty: (1) where a person agreed to be bound by a determination of issues in an action between others; (2) where there is a pre-existing substantive legal relationship between the person to be bound and a party to the judgment, such as preceding and succeeding owners of property, bailee and bailor, and assignee and assignor; (3) in certain limited circumstances where a nonparty was adequately represented by someone with the same interests who was a party to the suit, such as properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries; (4) where the nonparty assumed control over the original litigation in which judgment was rendered; (5) where a nonparty to the original litigation brings suit as the designated representative of a person who was a party to the

19

prior adjudication; and (6) where a special statutory scheme expressly forecloses successive litigation by nonlitigants, so long as the scheme is otherwise consistent with due process. *Taylor v. Sturgell*, 533 U.S. 880, 893-896 (2008).

### i.     Privity on the Plaintiffs' Side

The Merrill Lynch Defendants note that two Plaintiffs in this case, Linda Metcalf and FilmWest Productions, LLC, were also Plaintiffs in the New Mexico action. The ML Defendants argue that the second element of res judicata is therefore satisfied as to these two parties.  The ML Defendants further argue that the remaining three Plaintiffs in this case – Parents LLC, SunWest Capital Management, Inc., and Michelle Hartly – are in privity with either Metcalf or FilmWest.

To show the existence of privity on the Plaintiffs' side, the ML Defendants point to the relationships between the Plaintiffs, which have been confirmed through discovery.  Parents LLC is linked to Metcalf because Metcalf is an owner and managing member of Parents LLC.  (Doc. 139-17 ¶ 7, 9).  SunWest Capital is linked to Metcalf because Metcalf is an owner of SunWest.  (Doc. 139-17 ¶ 6). Michelle Hartley is linked to FilmWest because Hartley is an owner, managing member, and president of FilmWest.  (Doc. 139-17 ¶ 2, 4).

The ML Defendants also cite the Settlement Agreement that was entered

into in the New Mexico action. The ML Defendants argue that the presence of Parents LLC, SunWest, and Hartley as parties to the Agreement demonstrates the close legal relationships between the parties to the New Mexico action and the parties to the instant case.  The first paragraph of the Settlement Agreement specifies that "[t]his Settlement Agreement ... is made by and between Solar Wind Productions, LLC, Rio Grande Studios, LLC, Michael Jacobs, Ruby Handler Jacobs, Trojan Productions, Inc., Sword of Loa, LLC, Alexander Karimizand, FilmWest Productions, LLC, Do You Know Where Your Parents Are? LLC, SunWest Capital Management, Inc., Michelle Hartley, and Linda Metcalf."  (Doc. 141).  In the definitions that follow, the term "FPI" is defined as including, individually and collectively, FilmWest Productions, Parents LLC, Michelle Hartley, and Linda Metcalf.  (Id.).  The term "SCM" is defined as including, individually and collectively, SunWest Capital Management, Michelle Hartley, and Linda Metcalf.  (Id.).  Further, Hartley signed the Agreement on her own behalf and also as the "Authorized Member" of FilmWest and Parents LLC.  (Id.). Metcalf similarly signed the Agreement on her own behalf and also as the "Authorized Member" of SunWest.  (Id.).

In response to ML Defendants' arguments, Plaintiffs argue that Parents LLC was not in privity with FilmWest or Metcalf.  However, the only support given for

this assertion is that the New Mexico action was an interpleader while this is a tort case.  Plaintiffs present no other argument with regard to Parents LLC.  Plaintiffs present no argument at all that the remaining Plaintiffs – FilmWest, Metcalf, Hartley, and SunWest – were not either parties to the New Mexico action or in privity with a party to that case.

We agree with the ML Defendants that all of the Plaintiffs in this case were either parties to the New Mexico action or are in privity with a party to the New Mexico action. Metcalf and FilmWest are named parties in both cases.  A number of the six potential ways of establishing privity described by the Supreme Court in *Taylor v. Sturgell* could apply to the remaining Plaintiffs.  As is clear from the facts described above, the Plaintiffs are legally intertwined, with either Hartley and Metcalf having an ownership interest and/or management authority over FilmWest, SunWest, and Parents LLC.  Taking on a different corporate moniker does not give a Plaintiff the authority to relitigate issues that have already been decided. When a judgment has been entered against a corporation, later litigation on the same cause of action by an officer, director, or shareholder of that corporation is barred if the individual participated in and effectively controlled the earlier case.  *See Teletronics Services Inc. v. Anaconda-Ericsson Inc.*, 762 F.2d 185, 191 (2d Cir.1985).  This is precisely what Hartley has done.  Logically, the

same principle must be true if the process works in the other direction; if the individual first sues in her personal capacity and then controls a subsequent suit brought by the corporation.  This is what Metcalf has done.  Based on the facts uncovered through discovery, ML Defendants have proved that Metcalf and Hartly exercise sufficient control over the other business entity Plaintiffs to establish the existence of privity between them.

### ii.      Privity on the Defendants' Side

Plaintiffs argue that Defendant Robin Brubacher is not in privity with Defendant Merrill Lynch and the judgment in the New Mexico case has no preclusive effect toward her.[3]  In support, Plaintiffs argue that Brubacher was not a party to the New Mexico action and has been sued individually in her personal capacity rather than as a Merrill Lynch employee.  ML Defendants argue that Defendant Robin Brubacher, as an employee of Merrill Lynch acting in the scope her duties, is in privity with Merrill Lynch and is entitled to have the claims against her dismissed.

Plaintiffs also argue that ML Defendants bear the burden of proving on summary judgment that all of Brubacher's action were in the course and scope of

---

[3]Plaintiffs similarly argue that Defendant Lawrence Bellmore is not in privity with Merrill Lynch, but ML Defendants have not moved for summary judgment on Bellmore's behalf and therefore we need not address Plaintiffs' argument with respect to Bellmore.

her employment, and that ML Defendants have failed to do so.  Plaintiffs cite to case law indicating that whether "Defendants were acting outside the scope of their authority" is "in part a question of fact." *Deflon v. Sawyers*, 137 P.3d 577, 582, n. 1 (10th Cir.1986).  In response, ML Defendants point out that *Deflon*, in the sentence immediately preceding the language cited by Plaintiffs, holds that "[w]e do not decide whether Plaintiff has met her burden to show that Defendants were acting outside the scope of their authority." *Id.*

We agree with ML Defendants that Brubacher is in privity with Merrill Lynch.  The doctrine of res judicata applies to parties where one is vicariously responsible for the other, such as in an employer-employee relationship. *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 n.11 (3d Cir.2006); *see also* Restatement (Second) of Judgments § 51 (1982).  Plaintiffs' Second Amended Complaint (Doc. 122) contains no allegations that Brubacher was acting outside the scope of her employment such that Merrill Lynch would not be vicariously liable.

Finally, Plaintiffs are incorrect in their assertion that, for summary judgment purposes, ML Defendants bear the burden of proving that Brubacher was acting within the scope of her employment.  For the purpose of avoiding the effects of res judicata, it is incumbent on the Plaintiffs to allege and present some evidence that

24

Brubacher acted outside the scope of her employment in taking the actions alleged by Plaintiffs.  This is made clear in the *Deflon* case cited by both Plaintiffs and ML Defendants.  Plaintiffs have not presented facts to suggest that Brubacher was acting outside her employment with Merrill Lynch.  Therefore, we determine that privity exists between Defendants Brubacher and Merrill Lynch.

### 3.    Cause of Action

The third and final element of a res judicata defense is that the subsequent suit must be based on the same cause of action as the original.  *In re Mullarkey*, 536 F.3d, at 225.  This analysis does not turn on the use of an identical legal theory, but rather "the essential similarity of the underlying events giving rise to the various legal claims."  *Davis v. U.S. Steel Supply*, 688 F.2d 166, 1717 (3d Cir.1982).  The Third Circuit follows the modern trend "in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the transaction or occurrence."  *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir.1984).  Therefore, "res judicata bars not only claims that were brought in the previous action, but also claims that could have been brought" based on the same transaction or occurrence.  *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir.2007).  "A claim extinguished by res judicata 'includes all rights of the plaintiff to remedies against the defendants

25

with respect to all or any part of the transaction or series of connected transactions, out of which the action arose.'" *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 174 (3d Cir.2009) (citing Restatement (Second) of Judgements § 24(1) (1982)).

The Merrill Lynch Defendants argue that there exists a common nucleus of operative facts between the New Mexico case and the current action. They point out that both suits involve the same $200,000 deposit, both suits arise out of efforts to produce the same film, both suits involve the same alleged Financing Agreement between Solar Wind and FilmWest, and, most importantly, that the basis for both suits is the same alleged conduct of the same individuals and entities. The ML Defendants further argue that not only *could* Plaintiffs have brought the current claims as part of the New Mexico action, but Plaintiffs were in fact *required* to bring the additional claims under New Mexico's compulsory counterclaim rule. *See* New Mexico Rule of Civil Procedure 1-013(A) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction").

In response, Plaintiffs argue that they did not allege any tort or contract causes of action in the New Mexico case.  The only issue litigated with regard to Merrill Lynch was whether an interpleader should have been granted.  The claims here are different, meaning that res judicata only applies if the claims should have been brought in the New Mexico action.  Plaintiffs argue that they did not have to bring the claims in New Mexico because actions in equity do not have a preclusive effect on subsequent tort actions.

Plaintiffs also argue that, even if the Court accepts all of ML Defendants' previous arguments, the ML Defendants nevertheless acquiesced to Plaintiffs' claim-splitting by not objecting to it sooner.  Plaintiffs assert that "[t]he failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim" and that defendants who fail to object cannot later "benefit from their silence."  *R&J Holding Co. v. Redevelopment Auth.*, 670 F.3d 420, 428 (3d Cir.2011).  Plaintiffs also cite New Mexico law which requires defendants to object to claim-splitting "at the earliest feasible point."  *Santa Fe N., Inc. v. Santa Fe Estates, Inc.*, 182 P.3d 794, 807 (N.M. Ct. App.2008).  Plaintiffs argue that ML Defendants did not object until their Motion to Dismiss (Doc. 106) was filed on July 19, 2011, nearly two years after the filing of Plaintiffs' Complaint (Doc. 1) on August 17, 2009 and more than forty days

27

after the New Mexico action concluded as to all parties on June 2, 2011 ( Doc.

139-14).

We conclude that Plaintiffs' claims in this case do arise from the same

transaction or occurrence that gave rise to the claims in the New Mexico action.

Both suits involve the same conduct by the same parties and the legal claims

asserted by Plaintiffs against the Merrill Lynch Defendants could have been

raised in the New Mexico action.  Plaintiffs' arguments urging us to distinguish

between the claims raised in the New Mexico action and the Middle District

action are not persuasive because the claims are based on the same "transaction or

series of connected transactions out of which the action arose" and Plaintiffs had

a full opportunity to raise them in New Mexico.  *See Elkadrawy*, 584 F.3d, at 174.

The authorities cited by Plaintiffs in their argument to the contrary, *Hakkila v.

Hakkila*, 812 P.2d 1320 (N.M. Ct. App.2007), and *Computer One, Inc. v.

Grisham & Lawless, P.A.*, 144 N.M. 424 (2008), are easily distinguishable.  In

*Computer One*, there was no res judicata effect because the first "action" was not

a suit against the same party. Rather, it was a motion by an attorney to collect fees

from a client.  *Id.* at 430.  The client later sued the attorney for malpractice and,

although res judicata would have applied had the first action been an independent

*complaint* for fees, a *motion* for fees as part of another lawsuit did not preclude

the later action.  *Id.*  The second case, *Hakkila*, was a divorce action.  The opinion

contains no references to res judicata or claim preclusion anywhere in its text,

only that there in no compulsory joinder of tort claims in a dissolution

proceeding.  *Hakkila*, 812 P.2d, at 1330.  The holding in *Hakkila* deals with very

different subject matter than is at issue in this case.

The ML Defendants cite New Mexico's compulsory counterclaim rule, but

we need not consider its effect because it is essentially a codification of the

common law doctrine of res judicata.  The rule states that when a party has a

claim against an opposing party, based on the same transaction or occurrence

already at issue in the case, it must be raised.  *See* N.M. Rule of Civ. Pro. 1-

013(A).  The same applies to avoid res judicata.  Here, Plaintiffs had a claim

against Merrill Lynch based on the same events, but rather than raise those claims

in the same action Plaintiffs instead filed suit in Pennsylvania.

Contrary to Plaintiffs' arguments, ML Defendants did not acquiesce to

Plaintiffs' claim-splitting.  When FilmWest filed a Motion to Dismiss in the New

Mexico action (Doc. 145-4) containing mention of re-filing the case in

Pennsylvania, Merrill Lynch responded that "[t]he Court should resolve the

competing claims in this single forum ... rather than allow FilmWest to further

forum shop and engage in duplicative and piecemeal litigation in additional

jurisdictions" (Doc. 145-5) and FilmWest's Motion to Dismiss was ultimately withdrawn (Doc. 145-6).  Instead of moving the entire case to Pennsylvania as was originally planned, Plaintiffs merely filed a second action and pursued both simultaneously, thereby assuming the risk that the conclusion of one of the actions could have preclusive effect on the other.  The ML Defendants then moved for dismissal based on res judicata within a reasonable time after the dismissal of the New Mexico case.

## V.    CONCLUSION

For the foregoing reasons, we shall grant Defendants Merrill Lynch, Pierce, Fenner & Smith, Incorporated, and Robin Brubacher's Motion for Summary Judgment (Doc. 139).

**NOW, THEREFORE IT IS HEREBY ORDERED THAT:**

1.    Plaintiffs' motion for leave to file a sur reply brief in opposition to Defendants' Motion for Summary Judgment (Doc. 147) is **DENIED**.

2.    Defendants Merrill Lynch, Pierce, Fenner & Smith, Incorporated, and Robin Brubacher's Motion for Summary Judgment (Doc. 139) is **GRANTED**.

3.    Defendants Merrill Lynch, Pierce, Fenner & Smith, Incorporated, and Robin Brubacher are **REMOVED** as parties.

s/ John E. Jones III
John E. Jones III
United States District Judge